NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

MAR 29 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; CENTER FOR ENVIRONMENTAL HEALTH, <br><br> Petitioners, <br><br> v. <br><br> U.S. ENVIRONMENTAL PROTECTION AGENCY; MICHAEL S. REGAN, Administrator, United States Environmental Protection Agency, <br><br> Respondents. | No.  20-71196 <br><br> EPA No. EPA-R09-OAR-2018-0562 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Environmental Protection Agency

Argued and Submitted March 8, 2021
San Francisco, California

Before:  WALLACE, GOULD, and FRIEDLAND, Circuit Judges.

The Center for Biological Diversity and the Center for Environmental

Health (collectively, "Petitioners") petition for review of a final rule issued by the

Environmental Protection Agency ("EPA") that approved a plan to control ozone

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

emissions in Imperial County, California. We have jurisdiction pursuant to 42 U.S.C. § 7607(b)(1), and we deny the petition.

Located along the U.S.-Mexico border, Imperial County is home to approximately 184,000 people and a thriving agriculture industry. Just across the southern border lies Mexicali, Mexico, a major metropolitan area and industrial hub with over one million residents. The county and Mexicali share an "airshed," meaning that air pollution is freely and routinely transported between them.

In 2012, EPA designated Imperial County as a "nonattainment area" under the 2008 National Ambient Air Quality Standards ("NAAQS") for ozone. *See* 77 Fed. Reg. 30,088, 30,099 (May 21, 2012). EPA classified the area as "Marginal," or the lowest nonattainment classification level. *Id.* Consequently, California was required to demonstrate—through revisions to its state implementation plan ("SIP") for the 2008 ozone NAAQS—that the county would attain the NAAQS by July 20, 2015. In 2016, EPA determined that the county had not attained the NAAQS, reclassified the area as the next most serious nonattainment level "Moderate," and required California to formulate a SIP that would attain the NAAQS by July 20, 2018. *See* 81 Fed. Reg. 26,697, 26,698-99 (May 4, 2016).

California submitted demonstrations indicating that the county would attain the NAAQS by the 2018 deadline *but for* emissions from Mexico, and that EPA should therefore approve the state's plan revisions under the Clean Air Act

2

section 179B, titled "[i]nternational border areas." 42 U.S.C. § 7509a(a). Section 179B contains two relevant provisions. First, section 179B(a) directs EPA to approve SIP revisions that meet all applicable statutory requirements except "a requirement that such . . . revision demonstrate attainment and maintenance" of the NAAQS by the attainment date, so long as EPA determines that the SIP revision *would* be adequate to "attain and maintain" the NAAQS "but for emissions emanating from outside of the United States." *Id.* § 7509a(a). Second, section 179B(b) of the Act exempts nonattainment areas from reclassification to a more severe category of nonattainment if a state establishes that the area would have attained the ozone NAAQS but for international emissions. *Id.* § 7509a(b). California contended that both provisions should be applied to its SIP revisions for Imperial County.

On November 1, 2019, EPA issued a proposed rule to approve California's revised SIP submissions for Imperial County under both subsections of section 179B(a). *See* 84 Fed. Reg. 58,641, 58,665 (Nov. 1, 2019).[1] Under the proposed rule, California would keep its "Moderate" nonattainment status, and therefore would remain subject to various pollution control requirements. 84 Fed. Reg. at 58,641. Petitioners submitted comments arguing, among other things, that

---

[1] This determination was technically forward looking to the 2018 attainment date, but it appears to have been delayed for reasons unrelated to this litigation.

3

the terms "maintenance" and "maintain" in section 179B(a) require the county to demonstrate that the SIP would achieve compliance with the NAAQS beyond the attainment date but for international emissions, and that it is not enough to project compliance until the attainment date. On February 27, 2020, EPA issued a final rule approving California's revised SIP. *See* 85 Fed. Reg. 11,817, 11,818-19 (Feb. 27, 2020). In response to Petitioners' comments, EPA declined to interpret the terms "maintenance" and "maintain" in section 179B(a) and explained that even Petitioners' preferred interpretation would be satisfied by California's SIP because extra-record data confirmed that ozone emissions in Imperial County would decline until 2030. 85 Fed. Reg. at 11,819-21. This petition for review followed.

We review EPA's actions approving or disapproving SIP submissions under the "general standard of review for agency actions" set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06. *Latino Issues F. v. EPA*, 558 F.3d 936, 941 (9th Cir. 2009). "Under the APA, we consider whether . . . EPA's action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.* (quoting 5 U.S.C. § 706(2)(A)).

1. We need not address Petitioners' arguments about the proper interpretation of the terms "maintain" and "maintenance" in section 179B(a) because, even assuming Petitioners' preferred interpretation, EPA's approval of the SIP was not arbitrary, capricious, or an abuse of discretion.

4

2. EPA did not violate the APA's notice requirements by relying on data in the final rule that was not cited in the proposed rule. "An agency . . . may use 'supplementary data, unavailable during the notice and comment period, that expands on and confirms information contained in the proposed rulemaking and addresses alleged deficiencies in the pre-existing data, so long as no prejudice is shown.'" *Kern Cnty. Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006) (quoting *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1402 (9th Cir. 1995)). In the proposed rule, EPA explained that California's modeling sufficiently demonstrated declining ozone emissions in the county, such that domestic emissions would fall below the 2008 ozone NAAQS by the 2018 attainment date. 84 Fed. Reg. at 58,653-55. EPA further noted that other data "support[ed] and corroborat[ed] the modeling," including California's analyses of "long-term downward trends" in Imperial County's ozone emissions. 84 Fed. Reg. at 58,654. EPA's use of extra-record data to examine emissions further into the future in the final rule merely "confirm[ed] and expand[ed] on" the data that showed the county's ozone emissions declining, "providing additional grounds for the well-supported conclusions in the [proposed rule]."[2] *Kern Cnty. Farm Bureau,* 450 F.3d at 1079.

---

[2] Petitioners have also failed to show prejudice. Although Petitioners allege that they would have "disputed the accuracy" of some of the supplemental data on

3. EPA did not violate section 179B(a) by relying on information that was not submitted by California. Nothing in the Clean Air Act or our caselaw indicates that EPA must limit its analysis under section 179B(a) to data provided in California's submissions. To the contrary, EPA regulations indicate that the agency has broad discretion to determine how best to evaluate section 179B demonstrations. *See, e.g.*, 78 Fed. Reg. 34,178, 34,205 (June 6, 2013) ("EPA has historically evaluated [section 179B] demonstrations on a case-by-case basis, based on the individual circumstances, the classification of the area and the data provided by the submitting state.").

4. EPA's approval of the SIP was not arbitrary or capricious. According to Petitioners, EPA failed to adequately explain how it could address Imperial County's emissions if they worsen in the future. We reject this argument for two reasons. First, EPA discredited Petitioners' concern by determining that Imperial County's future emissions would continue to decline through 2030. Nothing in the record suggests that Imperial County's domestic emissions will rise vis-à-vis Mexico's, or that Imperial County's total emissions will rise such that Imperial

the theory that California undercounts emissions from agricultural soils, Petitioners cite no authority to support this allegation. Furthermore, Petitioners do not explain why they did not raise such concerns in their comments on the proposed rule, in which EPA relied on emissions data submitted by California. Petitioners' allegations are thus too speculative to demonstrate that they were prejudiced by EPA's use of extra-record data in the proposed rule.

County would no longer be able to attain the 2008 NAAQS but for international emissions.

Second, EPA correctly noted in the final rule that it may exercise its authority to call for plan revisions pursuant to 42 U.S.C. § 7410(k)(5) "if domestic emissions were to increase such that the nonattainment problem were to be exacerbated." 85 Fed. Reg. at 11,821. California must continue to collect and report air quality monitoring data under existing regulations. *See* 40 C.F.R. § 58.10 (2020). Using this data, EPA could determine that the SIP for Imperial County no longer complies with section 179B, and it could require plan revisions, as necessary. *See Mont. Sulphur & Chem. Co. v. U.S. EPA*, 666 F.3d 1174, 1184-86 & n.3 (9th Cir. 2012).

Petitioners also argue that EPA's final rule was arbitrary and capricious because EPA failed to explain adequately its reasoning as to the following issues: (1) why EPA considered data for $PM_{10}$ to be an appropriate substitute for ozone data; and (2) why additional photochemical modeling and estimations of future Mexican emissions should not have been required here. We owe significant deference to the agency when reviewing technical analyses. *Lands Council v. McNair*, 629 F.3d 1070, 1074 (9th Cir. 2010). EPA adequately explained its reliance on data for $PM_{10}$ in the final rule, *see* 85 Fed. Reg. at 11,820, and nothing in the law or the administrative record suggests that EPA's decision not to cite

7

additional photochemical modeling or estimations was unreasonable. We therefore hold that EPA's final rule was not arbitrary or capricious.

**PETITION DENIED.**